## UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF COLUMBIA

AHMAD HALIM and
SHARIF ABDELHALIM,

        Plaintiffs,

    v.

SHAUN DONOVAN, Secretary, U.S.
Department of Housing and Urban
Development, *et al.,*

        Defendants.

**Civil Action No. 12-00384 (CKK)**

## MEMORANDUM OPINION
(February 15, 2013)

Ahmad Halim ("Halim") and his son Sharif Abdelhalim ("Abdelhalim") (together "Plaintiffs"), each proceeding *pro se*, bring this action against various defendants, alleging discrimination based on nationality and religion in relation to contracts for various properties owned or desired to be owned by Plaintiffs. Defendants are Shaun Donovan, Secretary, United States Department of Housing and Urban Development ("HUD"); Ray Griffin, City Manager of the City of Henderson, North Carolina ("Griffin"); and Members of the City Council of the City of Henderson, North Carolina (the "City Defendants"). Presently before the Court are [28] Griffin's Motion to Dismiss and [30] the City Defendants' Motion to Dismiss.[1] Upon consideration of the parties' submissions,[2] the relevant authorities, and the record as a whole, the

---

[1] Also pending before the Court is HUD's [40] Motion to Dismiss, which raises issues distinct from those discussed in this Memorandum Opinion and shall be addressed by separate order.

[2] While the Court renders its decision on the record as a whole, its consideration has focused on the following documents: Def. Griffin's Mot. to Dismiss ("Griffin Mot."), ECF No. [28]; Affidavit of Def. Griffin in Supp. of Mot. to Dismiss ("Griffin Aff."), ECF No. [29]; Mot. to Dismiss by City of Henderson, Mayor James O'Geary, and City Council Members James

Court shall **GRANT** Defendants' [28], [30] motions to dismiss and shall accordingly **DISMISS-WITHOUT-PREJUDICE** all claims against Griffin and the City Defendants for lack of personal jurisdiction.

## I. BACKGROUND

This action was commenced by Halim on March 9, 2012.  On May 15, 2012, because it was unclear from the pleadings whether Halim was proceeding alone in this action, or whether he had intended to join his son, Abdelhalim, whose name appears on the deed of one of the properties at issue in this suit, the Court ordered Halim and Abdelhalim to each file a separate, signed Notice with the Court indicating whether they wanted to be considered plaintiffs in this action.  *See* Mem. Order at 3, ECF No. [16].  Ultimately, both Halim and Abdelhalim filed the required Notice, and both Halim and Abdelhalim stated that they wanted to be considered plaintiffs in this matter. *See* Notice of Sharif Abdelhalim, ECF No. [17]; Notice of Ahmad Halim, ECF No. [19]. It being clear that Halim and Abdelhalim assert a right to relief arising out the same transaction, occurrence, or series of transactions or occurrences, and that common questions of law or fact would arise, the Court found that Halim and Abdelhalim could be joined as plaintiffs.  *See* FED. R. CIV. P. 20(a)(1).  The Court found, in light of Abdelhalim's joinder in

Kearney, Sara Coffey, Michael Rainey, Michael Inscoe, Garry Daeke, Brenda Jenkins, Lonnie Davis, and George Daye ("City Defs' Mot."), ECF No. [30]; Affidavits of City Defs' in Supp. of Mot. to Dismiss ("City Defs' Affs"), ECF No. [30] (with exhibits); Pls' Mot. to Overrule Def. Griffin Mot. to Dismiss ("Pls' Opp'n to Griffin Mot."), ECF No. [35]; Pls' Mot. to Overrule Defs' City of Henderson, Mayor of the City and Members of the City Council Mot. to Dismiss ("Pls' Opp'n to City Defs' Mot."), ECF No. [36]; Pls' Aff. of Halim in Supp. of Mot. to Overrule Henderson Defs Mots. to Dismiss ("Halim Aff."), ECF No. [39]; Def. Griffin's Reply Mem. Supporting Def. Griffin's Mot. to Dismiss ("Griffin Reply"), ECF No. [37]; Reply Mem. Supporting Mot. to Dismiss filed by City of Henderson, Mayor James O'Geary, and City Council Members James Kearney, Sara Coffey, Michael Rainey, Michael Inscoe, Garry Daeke, Brenda Jenkins, Lonnie Davis, and George Daye ("City Defs' Reply"), ECF No. [38].  In an exercise of its discretion, the Court finds that holding oral argument on the instant motions would not be of assistance in rendering a decision.  *See* LCvR 7(f).

the action, that the then operative complaint, the [15] Amended Complaint, which referred to a singular "plaintiff" and made no effort to distinguish between Halim and Abdelhalim, would need to be amended before Defendants could render a meaningful response.  Accordingly, the Court ordered Halim and Abdelhalim to file a Second Amended Complaint, setting forth, at a minimum, a short and plain statement of the grounds for the Court's jurisdiction, a short and plain statement of each and every claim showing an entitlement to relief, and a demand for all the relief sought.  The Court also ordered Plaintiffs to make a good faith effort to distinguish factual allegations and claims relating to Halim and factual allegations and claims relating to Abdelhalim and purposely explained to Plaintiffs that Halim could not represent Abdelhalim's interests before this Court, and Abdelhalim could not represent Halim's interests, but rather, that each must personally and individually prosecute their claims unless and until they secure a duly authorized attorney to appear on their behalf. Plaintiffs subsequently filed the [25] Second Amended Complaint, which is the operative complaint in this action.

Preliminarily, the Court pauses to observe that Plaintiffs' Second Amended Complaint is vaguely worded and, by any reasonable measure, difficult to decipher.  The Court finds particularly troublesome Plaintiffs' failure to relate their several factual allegations to any clearly articulated legal claims; indeed the only reference to potential legal bases for any of Plaintiffs' claims may be found within the section titled "Grounds for the Court[']s Jurisdiction" wherein Plaintiffs cursorily ground jurisdiction over "all of the defendants" in the action on 42 U.S.C. § 1983; Title VI of the Civil Rights Act; and inexplicably, Federal Rules of Civil Procedure, Rule 12(b)(7) and Rule 19 and *Capital Medical Center, LLC v. Amerigroup Maryland, Inc.*, 677 F. Supp. 2d 188 (D.D.C. 2010).  As Plaintiffs' submissions in connection with the instant motions clarify, Plaintiffs assert that "all of the defendants discriminated against [them] based on religion

and national origin" and "violated Plaintiffs civil rights" in violation of 42 U.S.C. § 1983 and, with respect to HUD, Title VI of the Civil Rights Act.  Plaintiffs' citation to the Federal Rules of Civil Procedure, Rule 12(b)(7) and Rule 19 and *Capital Medical Center, LLC v. Amerigroup Maryland, Inc.*, 677 F. Supp. 2d 188 (D.D.C. 2010) appears to be an attempt – misguided as it may be – to ground subject matter jurisdiction in the purported need to join Griffin, the City Defendants, and HUD in the same action.  *See* Pl.'s Opp'n to City Defs' Mot. at 4 ("For this Court to properly dispose the claims of discrimination … the [City] [D]efendants must be a party of the litigation, in accordance of Federal rules of civil procedure 12b(7) and Rule 19[.]").  It is well-established, however, that while Rule 19 supplies a mechanism by which interested parties can be joined, it is not a source of federal jurisdiction.  To the contrary, the Rule *presumes* the preexistence of subject matter jurisdiction, *see* Fed. R. Civ. P. 19(a), and in fact even directs that in cases where a party who is required to be joined if feasible cannot be joined (for example, where subject matter jurisdiction (*i.e.*, diversity) would be destroyed by joinder of the "required" party), the court must determine whether the action should proceed among the existing parties or should be dismissed.  Fed. R. Civ. P. 19(b).

As for Plaintiffs' factual allegations, the Second Amended Complaint makes allegations of misconduct by officials of the City of Henderson, North Carolina relating to an apartment complex owned by Halim and/or Abdelhalim in Henderson, North Carolina (the "Henderson property").[3]  Specifically, Plaintiffs appear to claim that Griffin and the City Defendants

---

[3] The parties dispute which of the Plaintiffs is the legal owner of the Henderson property.  Both Griffin and the City Defendants argue that the deed shows that the property in question is owned by Abdelhalim, not Halim, and that the Court should therefore dismiss all claims asserted by Halim for lack of standing.  *See* Def. Mot. at 10-14; City Defs' Mot. at 12.  Plaintiffs argue that Halim has always been the "actual" owner and that Abdelhalim's name was put on the deed solely for "family reasons."  Further, it appears from Plaintiffs' submissions that on June 26, 2012, Abdelhalim executed a "Quitclaim Deed" in favor of Halim, dating back to October 1,

discriminated against them on the basis of their religion and national origin by requesting Halim to "put his hand on the Bible" while he was before the planning commission in connection with his request for a permit to rehabilitate the Henderson property, and by ultimately denying Plaintiffs the permit.  2d Am. Compl. at 5-6, ¶ XXVI.  Plaintiffs also allege that Griffin publicly "insulted" Plaintiffs' religion and national origin and "implicitly call[ed] them [t]errorists" by telling a local newspaper that the property "looks like Beirut," which statement Plaintiffs assert "ignited three consecutive fires at the property" a "few weeks later[.]"  *Id*. at 5, ¶¶ XXIV-XXV. Finally, Plaintiffs allege that Griffin, at some unspecified time stated that he "is committed to remove the property from the plate [*sic*]"; that Griffin "kept his promise and removed the property from the plate [*sic*]"; and that Griffin's "attitude ignited another fire at the property as a prerequisite for his promise."  *Id*. at 6, ¶¶ XXVI, XXVII.  The Second Amended Complaint provides no further information regarding source, timing, or other circumstances surrounding the alleged fires, nor about the circumstances surrounding Griffin's alleged comments.  By way of relief, Plaintiffs request the Court to order Griffin and the City Defendants to pay five million dollars for the damages caused to the Henderson property and one million dollars to compensate Plaintiffs for their emotional distress and humiliation.  2d Am. Compl. at 7, ¶¶2-3.[4]

---

2007.  *See* Pls' Opp'n to Giffin's Mot. at 5 & Ex. C; Pls' Opp'n to City Defs' Mot. at 6 & Ex. C. Griffin and the City Defendants argue that this quitclaim deed is a "sham" and that Plaintiffs may not retroactively create "standing."  *See* Griffin Reply at 3; City Defs' Reply at 3.   Because the Court dismisses Plaintiffs claims against Griffin and the City Defendants on grounds of a lack of personal jurisdiction, the Court need not, and in the interest of judicial economy, shall not, address the parties' dispute regarding standing.

[4] Plaintiffs also assert separate claims of discrimination relating to a series of Housing Assistant Payments contracts with HUD concerning his purchase and management of several properties around the United States.  *See* 2d. Am. Compl. at 3-5, ¶¶ III – XXII.  Because none of these claims appear to be asserted against or involve, in any way, Griffin or any of the City Defendants, the Court need not discuss them at this time.

On August 2, 2012, Griffin filed a [28] Motion to Dismiss Plaintiffs' Second Amended Complaint Under Federal Rules [of Civil Procedure, Rule] 12(b)(1)(2) [sic] & (6), which Plaintiffs have opposed.  Also on August 2, 2012, the City Defendants filed a [30] Motion to Dismiss Plaintiffs' Second Amended Complaint Under Federal Rules [of Civil Procedure, Rule] 12(b)(1)(2)(3)(4)(5) [sic] & (6), which Plaintiffs have opposed.  Both motions have been fully briefed and are ripe for adjudication.

## II. LEGAL STANDARD

As noted above, Defendant Griffin moves to dismiss pursuant to Rule 12(b)(1) for lack of subject-matter jurisdiction, Rule 12(b)(2) for lack of personal jurisdiction, and Rule 12(b)(6) for failure to timely and properly state a claim upon which relief can be granted.  The City Defendants likewise move pursuant to Rules 12(b)(1), 12(b)(2), and 12(b)(6), and have additionally moved pursuant to Rule 12(b)(3) for improper venue, Rule 12(b)(4) for insufficient process, and Rule 12(b)(5) for insufficient service of process.

Generally, courts must evaluate a motion to dismiss for lack of subject matter or personal jurisdiction prior to considering a motion to dismiss for failure to state a claim.  *See, e.g., Feinstein v. Resolution Trust Corp.*, 942 F.2d 34, 40 (1st Cir. 1991) ("[C]ourts should ordinarily satisfy jurisdictional concerns before addressing the merits of a civil action."); *Combs v. Bakker*, 886 F.3d 673, 675 (4th Cir. 1989) (finding the district court's decision to first address defendants' Rule 12(b)(6) motion "awkward" and that the "proper course of review" required defendants' Rule 12(b)(2) motion to be considered first).  Although this rule need not be mechanically applied, as this Court has previously observed:

> Not only does logic compel initial consideration of the issue of jurisdiction over the defendant – a court without such jurisdiction lacks power to dismiss a complaint for failure to state a claim – but the functional difference that flows from the ground selected for dismissal likewise compels considering jurisdictional

and venue questions first.  A dismissal for lack of jurisdiction or improper venue does not preclude a subsequent action in an appropriate forum, whereas a dismissal for failure to state a claim upon which relief can be granted can be granted with prejudice.

*IMark Marketing Servs., LLC v. Geoplast S.p.A*, 753 F. Supp. 2d 141, 149 (D.D.C. 2010) (quoting *Arrowsmith v. United Press Int'l*, 320 F.2d 219, 221 (2d Cir. 1963)).  In view of these considerations, and because here, this Court plainly lacks personal jurisdiction over Griffin and the City Defendants, the Court need not reach Defendants' remaining arguments for dismissal.

When personal jurisdiction is challenged under Rule 12(b)(2), the plaintiff bears the burden of establishing a factual basis for asserting personal jurisdiction over a defendant.  *See Crane v. N.Y. Zoological Soc'y*, 894 F.2d 454, 456 (D.C. Cir. 1990).  To establish that personal jurisdiction exists, the plaintiff cannot rest on bare allegations or conclusory statements but "must allege specific facts connecting [each] defendant with the forum.  *Second Amendment Found. v. U.S. Conference of Mayors*, 274 F.3d 521, 524 (D.C. Cir. 2001) (internal quotation omitted). "To make such a showing, the plaintiff is not required to adduce evidence that meets the standards of admissibility reserved for summary judgment and trial[;]" but rather, the plaintiff may "rest [his] arguments on the pleadings, 'bolstered by such affidavits and other written materials as [he] can otherwise obtain.'" *Urban Inst. v. FINCON Servs.*, 681 F. Supp. 2d 41, 44 (D.D.C. 2010) (quoting *Mwani v. bin Ladin*, 417 F.3d 1, 7 (D.C. Cir. 2005)).  "When determining whether personal jurisdiction exists over a defendant, the Court need not treat all of a plaintiff's allegations as true.  Instead, the Court may receive and weigh affidavits and any other relevant matter to assist it in determining the jurisdictional facts." *NBC-USA Housing, Inc., Twenty-Six v. Donovan*, 741 F. Supp. 2d 55, 58 (D.D.C. 2010) (internal citations and quotation marks omitted).  In the case of a *pro se* plaintiff, the Court is required to construe the *pro se* complaint liberally, *see Howerton v. Ogletree*, 466 F. Supp. 2d 182, 183 (D.D.C. 2006).

However, "*[p]ro se* plaintiffs are not freed from the requirement to plead an adequate jurisdictional basis for their claims." *Gomez v. Aragon*, 705 F. Supp. 2d 21, 23 (D.D.C. 2010) (citation omitted).

In this Circuit, courts determine whether personal jurisdiction may be exercised "by reference to District of Columbia law." *United States v. Ferrara*, 54 F.3d 825, 828 (D.C. Cir. 1995). "A District of Columbia court may exercise personal jurisdiction over a person domiciled in, organized under the laws of, or maintaining his or its principal place of business in, the District of Columbia as to any claim for relief." D.C. Code § 13-422. Exercise of this so-called "general jurisdiction" requires that the defendant's contacts within the forum be "continuous and systematic" in order for the defendant to be forced to defend a suit arising out of any subject matter unrelated to the defendant's activities within the forum. *See Helicopteros Nacionales de Colombia, S.A. v. Hall*, 466 U.S. 408, 415-16, 104 S. Ct. 1868, 80 L. Ed. 2d 404 (1984).

Alternatively, the District Court for the District of Columbia may exercise "specific jurisdiction" to entertain controversies based on acts of a defendant that touch and concern the forum." *Kopff v. Battaglia*, 425 F. Supp. 2d 76, 81 (D.D.C. 2006) (citing *Steinberg v. Int'l Criminal Police Org.*, 672 F.2d 927, 928 (D.C. Cir. 1981)). To determine whether it may exercise specific jurisdiction over a particular defendant, a court must engage in a two-part inquiry. First, the Court must determine that the District of Columbia's long arm statute, D.C. Code § 13-423, authorizes jurisdiction. *See GTE New Media Servs., Inc. v. Bell-South Corp.*, 199 F.3d 1343, 1347 (D.C. Cir. 2000). *See also Edmond v. United States Postal Serv. Gen. Counsel*, 949 F.2d 415, 424 (D.C. Cir. 1991) (even when subject matter jurisdiction is predicated on federal question, plaintiffs must rely on the D.C. long-arm statute to assert personal jurisdiction over out-of-district defendants). In relevant part, the D.C. long-arm statute provides

that a District of Columbia court may exercise personal jurisdiction over a person as to a claim

for relief arising from the person's:

> (1) transacting any business in the District of Columbia;
> (2) contracting to supply services in the District of Columbia;
> (3) causing tortious injury in the District of Columbia by an act or omission in the District of Columbia;
> (4) causing tortious injury in the District of Columbia by an act or omission outside the District of Columbia if he regularly does or solicits business, engages in any other persistent course of conduct, or derives substantial revenue from goods used or consumed, or services rendered, in the District of Columbia;
> (5) having an interest in, using, or possessing real property in the District of Columbia…

D.C. Code § 13-423.[5]   Importantly, where jurisdiction is based solely on the D.C. long-arm

statute, "only a claim for relief *arising from acts enumerated in this section* may be asserted

against [the defendants]." *Id*.

Second, the court must find that exercise of jurisdiction comports with the requirements

of constitutional due process. *See GTE New Media Servs.*, 199 F.3d at 1347. This determination

turns on whether a defendant's "minimum contacts" with the District of Columbia establish that

"the maintenance of the suit does not offend traditional notions of fair play and substantial

justice." *Int'l Shoe Co. v. Washington*, 326 U.S. 310, 316, 66 S. Ct. 154, 90 L. Ed. 95 (1945)

(internal citation and quotation marks omitted). Such minimum contacts must arise from some

act by which the defendant "purposefully avails" himself of the privilege of conducting activities

within the District of Columbia, thus invoking the "benefits and protections of its laws." *Asahi*

*Metal Indus. Co. v. Super. Ct. of Cal., Solano Cty.*, 480 U.S. 102, 109, 107 S. Ct. 1026, 94 L. Ed.

2d 92 (1987). Put differently, the court "must ensure that the defendant's conduct and

connection with the forum 'are such that he should reasonably anticipate being hauled into court

---

[5] The alternative jurisdictional bases provided under the long-arm statute are inapplicable to this case.

there.'" *Marshall v. Labor & Indus., State of Washington*, 89 F. Supp. 2d 4, 9-10 (citing *World-Wide Volkswagen Corp. v. Woodson*, 444 U.S. 286, 297, 100 S. Ct. 559, 62 L. Ed. 2d 490 (1980)).

### III. DISCUSSION

For the reasons set forth below, the Court finds that Plaintiffs have not made a *prima facie* showing that this Court can assert personal jurisdiction over Griffin or any of the City Defendants.

**A. The Court Lacks Personal Jurisdiction over Defendant Griffin.**

While Plaintiffs' Second Amended Complaint fails to clarify whether Plaintiffs are suing Griffin in his personal capacity and/or in his official capacity as the City Manager of the City of Henderson, it is clear that the Court may not assert personal jurisdiction over Griffin in either capacity and must dismiss this action against him on that basis alone.

First, Plaintiffs have not, and could not, establish general personal jurisdiction over Griffin. Nowhere in the Second Amended Complaint do Plaintiffs allege that Griffin is domiciled in or maintains his personal place of business in the District of Columbia. *See* D.C. Code § 13-422. To the extent Griffin is sued in his personal capacity and as an agent as the City of Henderson, this Court may not exercise general personal jurisdiction over the City of Henderson under D.C. Code § 13-422 for reasons described *infra* Part III.B. Second, the Second Amended Complaint alleges no facts suggesting that Griffin – either in his individual or official capacity – transacted business, contracted to supply services, or caused tortuous injury in the District of Columbia, or has any interest in real property located in the District of Columbia. Indeed, although the Second Amended Complaint is less than a model of clarity, it appears that the purported wrongdoing – *i.e.*, the alleged discriminatory comments made to the local

newspaper and the purported incitement of fires leading to the property's destruction – are alleged to have taken place in Henderson, North Carolina, in connection with property also located in Henderson, North Carolina.

Nor have Plaintiffs made any arguments in their opposition brief to Griffin's motion to support a *prima facie* showing of personal jurisdiction. To the contrary, Plaintiffs only argument in response to Griffin's 12(b)(2) motion appears to be that because both Griffin and HUD discriminated against Plaintiffs (because HUD "allowed" Griffin and the City Defendants to demolish the property), both parties must be parties to the instant suit pursuant to Federal Rule of Civil Procedure 19. However, for reasons discussed *supra* Part I, Rule 19 is not a source of subject matter of jurisdiction and is certainly not a basis for personal jurisdiction. Plaintiffs have alleged not a single fact to support even the slightest of contacts between Griffin and the District of Columbia. To the extent Plaintiffs' vague assertion that "there was communication" between HUD and Griffin could be generously construed to imply that Griffin's government relations connections to the District of Columbia may form a basis for asserting personal jurisdiction under the long-arm statute, such argument is a nonstarter, as the courts have long recognized a "government contacts" exception to the "transacting business" provision of the long-arm statute. The government contacts exception provides that "a defendant's relationships with federal agencies do not enter the calculus of minimum contacts with the District of Columbia for jurisdictional purposes." *Chrysler Corp. v. General Motors Corp.*, 589 F. Supp. 1182, 1196 (D.C. Cir. 1984). *See also Envtl. Research Int'l, Inc. v. Lockwood Greene Engineers, Inc.*, 355 A.2d 808, 813 (D.C. 1976) ("To permit our local courts to assert personal jurisdiction over nonresidents whose sole contact with the District consists of dealing with a federal

instrumentality not only would pose a threat to free public participation in government, but also would threaten to convert the District of Columbia into a national judicial forum.").

Most critically, Plaintiffs have failed entirely to contest the facts asserted in Defendant Griffin's affidavit.[6]  As stated in his affidavit, Griffin is an individual who, at all times relevant to this action, was and remains a citizen and resident of the City of Henderson, North Carolina. *See* Griffin Aff. ¶2.  Griffin does not conduct any personal business, maintain any personal contacts, or own any property or bank accounts within the District of Columbia.  *Id.* ¶¶3-4. Griffin has only made two trips to the District of Columbia with his family, in 2009 and 2010 – each only a "long weekend" in duration – during which trips he took the Metro into the District to sightsee and dine at restaurants.  *Id.* ¶¶5-6.  Griffin stayed overnight in Arlington, Virginia on both trips.  *Id.* ¶6.  The only other occasions during which Griffin was present in the District were by virtue of taking the Northeast Regional Train from Charlottesville, Virginia through the District of Columbia to New York City for Thanksgiving in 2009, 2010, and 2011.  *Id.* ¶7. Clearly, these brief personal vacations to, or layovers in, the District of Columbia are woefully insufficient to confer general personal jurisdiction over him within the District.

Nor may the Court assert personal jurisdiction over Griffin as a defendant in his official capacity.  As Griffin's affidavit asserts, at all times relevant to this action, Griffin was and is the City Manager for the City of Henderson, North Carolina.  Griffin Aff. ¶ 8.  In his official

---

[6] As noted *supra* Part II., when resolving motions brought pursuant to Federal Rule of Civil Procedure 12(b)(2), courts are generally permitted to look outside the pleadings.  *See Land v. Dollar*, 330 U.S. 731, 736 n.4, 67 S. Ct. 1009, 1011 n. 4, 91 L. Ed. 1209 (1947) (stating that when there is a motion to dismiss based on the district court's jurisdiction, "the court may inquire by affidavits or otherwise, into the facts as they exist"), *overruled by implication on other grounds*, *Larson v. Domestic & Foreign Commerce Corp.*, 337 U.S. 682, 69 S. Ct. 1457, 93 L. Ed. 1628 (1949).  *See also Brunson v. Kalil & Co., Inc.*, 404 F. Supp. 2d 221, 223 n.1 (D.D.C. 2005) (considering affidavits attached to the parties' pleadings as relevant to the issue of personal jurisdiction).

capacity, he does not conduct any official business for the City within the District of Columbia, nor own or manage any property, business interest, or handle any matters for the City within the District of Columbia. *Id.* ¶9. Further, Griffin has not had any business contacts with the District of Columbia in the form of personal presence or attendance at any business meetings or conferences; nor does he own business property or bank accounts in the District. *Id.* ¶10. Griffin has conducted City business with representatives of HUD and Congress only over the phone, from his Office in Henderson, North Carolina. *Id.* ¶10, 11. As the foregoing assertions (which are uncontested by Plaintiff) make clear, even in his official capacity, Griffin does not have sufficient contacts with the forum of the District of Columbia, and this Court cannot properly assert personal jurisdiction over him in this case. *See e.g.*, *Donnelly v. Sebelius*, 851 F. Supp. 2d 109, 118 (D.D.C. 2012) ("Even if [the defendant, former Secretary of the Indiana Family and Social Services Administration] had been responsible for handling federal funds as alleged by the plaintiff, she did so in Indiana on behalf of an Indiana agency for Indiana residents. Where, as here [the defendant] has no apparent contacts with the District of Columbia, this Court cannot exercise personal jurisdiction over her.").

Finally, even assuming *arguendo* that the allegations contained within the Second Amended Complaint are true and that Griffin did publicly insult Plaintiffs' national origin and religion in the local media and did, somehow, destroy or contribute to the destruction of Plaintiffs' property, there is simply no way that as a result of this conduct, all of which took place exclusively in Henderson, North Carolina, Griffin "availed" himself of any privileges of this District or would have "reasonably anticipate[d] being hauled into" the District of Columbia. *Marshall*, 89 F. Supp. 2d at 9-10. Accordingly, this Court could not find that the exercise of jurisdiction over Griffin would comport with the requirements of constitutional due process.

For all of the foregoing reasons, Plaintiffs have failed to establish any legitimate grounds for exercising personal jurisdiction over Griffin in his personal or official capacity.

**B.  The Court lacks personal jurisdiction over the City Defendants.**

Plaintiffs' Second Amended Complaint lists as defendants HUD, Griffin, "The Mayor of the City of Henderson", and "The members of the City Council."  2d Am. Compl.  At no point have Plaintiffs moved to amend the complaint to state any names for the Mayor or any City Council Members, and did not include the names of any other individual defendants (other than Defendant Donovan, HUD Secretary, and Defendant Griffin, City Manager of the City of Henderson).  However, as the City Defendants contend, and Plaintiffs do not dispute, on April 17, 2012, the City of Henderson received by certified mail a handwritten brown envelope, containing a copy of the original complaint in this action, addressed to:

> "City Clerk/Esther Mcreakin
> for Mayor James O'Geary
> and City Council members and
> for the City of Henderson.
> members James Kearney
> Sara Coffey, D. Michael Rainey
> Michael Inscoe, Gary Daeke
> Brenda Peace Jenkins
> Lonnie Davis, George Daye
> 134 Rose Avenue
> Henderson, NC 27536-1434"

*See* City Defs' Mot. ¶9 & Ex. A.  The City Defendants also contend, and Plaintiffs nowhere dispute, that the City received in the same brown envelope two *altered* copies of the summons which the Clerk of this Court issued to Griffin, which Plaintiff Halim himself had apparently doctored by "whiting out" Defendant Griffin's name and replacing it with the handwritten words:

> "City of Henderson, Mayor James O'Geary
> and all the members of the City Council (Names on the envelop [*sic*])"

14

*See* City Defs' Mot. ¶ 14 & Exs. D, E.

If true, Plaintiff Halim's conduct is a deeply troubling, sanctionable abuse of the Court's process.  At the very least, it is clear that the ten individuals to whom Plaintiff Halim allegedly mailed the original complaint have not been properly named as defendants in the caption and body of any iteration of the complaint in this action and have therefore not been sued in their individual capacity.  Accordingly, although service of process in the manner attempted by Plaintiffs was unquestionably deficient, the Court need not reach the arguments raised in the City Defendants' motion to dismiss regarding failure to properly serve the summons and complaint on the following individuals in their individual capacity:   James O'Geary, James Kearney, Sara Coffey, D. Michael Rainey, Michael Inscoe, Gary Daeke, Brenda Peace Jenkins, Lonnie Davis, George Daye, Esther Mcreakin.   This finding is further supported by the fact that Plaintiffs themselves, in apparent defense of their actions, state "It is true that Plaintiffs did not write all the names in the complaint but it is true that Plaintiffs included all these names in their official capacity. . . . The Court did not ask Plaintiffs to add the names of each one.  Names do change, but the official positions stay the same."  Pls' Opp'n to City Defs' Mot. at 1-2.

To the extent Plaintiffs have asserted claims against the named Defendants – the Mayor of the City of Henderson and the Henderson City Council members – in their official capacity, this suit is essentially a suit against the City of Henderson itself.  *See Kentucky v. Graham*, 473 U.S. 159, 165, 105 S. Ct. 3099, 87 L. Ed. 2d 114 (1985) (Suits brought against individuals in their official capacities "generally represent only another way of pleading an action against an entity of which an officer is an agent.") (quoting *Monell v. New York City Dep't of Social Servs.*, 436 U.S. 658, 690 n. 55, 98 S. Ct. 2018, 56 L. Ed. 2d 611 (1978)).  *See e.g.*, *Robinson v. District of Columbia*, 403 F. Supp. 2d 39, 49-50 (D.D.C. 2005) (dismissing claims against the individual

defendant brought against him in his official capacity and stating that courts "routinely dismiss [ ] corresponding claims against individuals named in their official capacity"); *Barnes v. District of Columbia*, Civ. A. No. 03-2547 (RWR), 2005 WL 1241132, at *3 (D.D.C. May 24, 2005) (granting motion to dismiss because the "plaintiff's claims against the Mayor in his official capacity are duplicative of [the] plaintiff's claims against the District").

Because, as is clear from the various affidavits submitted in support of the City Defendants' motion to dismiss, neither the City of Henderson, the Mayor, nor any City Council Members are residents of the District of Columbia, *See* City Defs' Affs., the Court must engage in the above-described two-part inquiry to determine whether jurisdiction is applicable under the District of Columbia's long-arm statute and if so, whether a finding of jurisdiction satisfies the constitutional requirements of due process. *GTE New Media Servs.*, 199 F.3d at 1347. There is some support for the proposition that the District's long-arm statute is inapplicable to a city because, as a matter of law, cities are not "persons" under the statute. *See Black v. City of Newark*, 535 F. Supp. 2d 163 (D.D.C. 2008). However, even assuming *arguendo* that the City of Henderson is a "person", or that the Court could exercise personal jurisdiction over the City of Henderson by virtue of acts of its agents sued in their official capacities, *see, e.g., Daughtry v. Arlington Cnty., Va.*, 490 F. Supp. 307, 313 (D.C. Cir. 1980), the District's long-arm statute does not apply because Plaintiffs have alleged no relevant contacts – none – between the parties to the Second Amended Complaint or the events described in the Second Amended Complaint and the District of Columbia. The misconduct alleged in the Second Amended Complaint – namely, the City Council's purported denial of Plaintiffs' request for a rehabilitation permit and the alleged request that Halim "put his hand on the Bible" before the planning commission – are all alleged to have taken place in Henderson, North Carolina in connection with property located in

Henderson, North Carolina.  Further, as each of the City Council Members' Affidavits makes clear, none of the city officials conduct official business for the City within the District of Columbia, or own or manage any property, business interest, or handle any matters for the City within the District of Columbia.  *See* City Defs' Affs.  *See also* City Defs' Affs, Ex. 1 at ¶15 (Aff. of Esther McCrackin, City Clerk)   ("In my capacity as City Clerk, I have personal knowledge that the City does not conduct any regular business or persistent conduct in, nor does it derive any substantial revenue from, the District of Columbia").

Furthermore, even assuming *arguendo* that the Henderson City Council engaged in the conduct alleged in the Second Amended Complaint, all such conduct took place exclusively within Henderson, North Carolina and was on behalf of a Henderson governmental entity, for Henderson  residents.  Accordingly, neither the City of Henderson nor any of its officials could have "reasonably anticipate[d] being hauled into" the District of Columbia for actions taken in connection with Plaintiffs' Henderson property.  *Marshall*, 89 F. Supp. 2d at 9-10.  Put simply, Plaintiffs have not alleged that the Mayor of the City of Henderson, any of the City Council members, or any other agents of the City of Henderson of taking any actions by which the City or its agents "purposefully availed" themselves of the "privilege of conducting activities in the" District of Columbia.  *Asahi Metal Indus. Co.*, 480 U.S. 102 at 108-09.

In response to the City Defendants' motion, Plaintiffs offer no intelligible justification for the existence of personal jurisdiction over the City of Henderson or any of its agents.  Rather, they vaguely assert, verbatim, the same argument asserted in their opposition to Griffin's motion to dismiss – that Federal Rule of Civil Procedure 19 requires the exercise of jurisdiction over all defendants in this action – an argument which the Court has already rejected, *see supra* Part I.

## IV. CONCLUSION

For all of the foregoing reasons, the Court shall **GRANT** both Defendant Griffin's [28] motion to dismiss and the City Defendants' [30] motion to dismiss, insofar as both motions seek dismissal of this action pursuant to Federal Rule of Civil Procedure 12(b)(2) for lack of personal jurisdiction.    Accordingly,   the   Court   shall   **DISMISS-WITHOUT-PREJUDICE**   all   of Plaintiffs' claims against Defendants Ray Griffin, City Manager of the City of Henderson; the Mayor of the City of Henderson; and Members of the City Council of Henderson.

An appropriate Order accompanies this Memorandum Opinion.

Date:   February 15, 2013

_____/s/_____
**COLLEEN KOLLAR-KOTELLY**
United States District Judge