## UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF COLUMBIA

AHMAD HALIM and
SHARIF ABDELHALIM,

       Plaintiffs,

   v.

SHAUN DONOVAN, Secretary, U.S.
Department of Housing and Urban
Development, *et al.,*

       Defendants.

**Civil Action No. 12-00384 (CKK)**

## MEMORANDUM OPINION
(July 1, 2013)

Ahmad Halim ("Halim") and his son Sharif Abdelhalim ("Abdelhalim") (together "Plaintiffs"), each proceeding *pro se*, commenced this action against Shaun Donovan, Secretary, United States Department of Housing and Urban Development ("HUD") and the city manager, mayor, and several members of the city council of the City of Henderson, North Carolina (the "City Defendants"), alleging discrimination based on nationality and religion in relation to contracts for several properties owned or desired to be owned by Halim and/or Halim together with Abdelhalim. On February 15, 2013, the Court dismissed without prejudice Plaintiffs' claims against the City Defendants for lack of personal jurisdiction. *See* Memorandum Opinion (Feb. 15, 2013), ECF No. [52]; Order (Feb. 15, 2013), ECF No. [51]. As a result, all that remains in this action are Halim's claims against HUD.

Presently before the Court are two motions: HUD's [40] Motion to Dismiss and Plaintiff Halim's [53] Motion to Tansfer [*sic*] the Case Against Henderson Defendants to a Court in North Carolina that Has Juirsdictions [*sic*] Over them. Also before the Court is Halim's self-styled [55]

"Filinig [*sic*] of Legal Authorities to Supp. Juirsdictions [*sic*] of the Court over Henderson Defendents [*sic*] or Tansfer [*sic*] the Case Against Henderson Defendants to a Court in North Carolina That Has Juirsdictions [*sic*] Over Them," wherein Halim requests that the Court reconsider its findings regarding personal jurisdiction and reiterates his request for a transfer in the alternative.  Upon consideration of the parties' submissions,[1] the relevant authorities, and the record as a whole, the Court shall grant HUD's motion to dismiss and deny Halim's motion to reconsider or transfer.  The Court shall address each motion in turn.

## HALIM'S MOTION TO RECONSIDER OR TRANSFER

Subsequent to the issuance of this Court's February 15, 2013 [52] Memorandum Opinion and [51] Order dismissing Plaintiffs' case against the City Defendants for lack of personal jurisdiction, Halim moved to transfer Plaintiffs' claims against the City Defendants to "a Court in North Carolina."  *See* Pl.'s Mot. to Transfer.  Halim has also filed a self-styled "Filinig [*sic*] of Legal Authorities," wherein he requests that the Court reconsider its findings regarding personal jurisdiction or, alternatively, transfer the case to North Carolina.  *See* Pl.'s Filing of Legal Authorities. The Court shall construe the motions collectively as a motion to reconsider pursuant to Federal Rule of Civil Procedure 59(e).  *See Roane v. Gonzales*, 832 F. Supp. 2d 61, 64 (D.D.C. 2011) ("A motion to reconsider a final order is generally treated as a Rule 59(e) motion

---

[1] While the Court renders its decision on the record as a whole, its consideration has focused on the following documents: Second Am. Compl., ECF No. [25]; Federal Defendant's Motion to Dismiss ("HUD Mot."), ECF No. [40] (with exhibits); Plaintiffs' Mot. to Overrule Federal Defendant's Mot. to Dismiss ("Pl.'s Opp'n"), ECF No. [47] (with exhibits); Federal Defendant's Reply in Supp. of Mot. to Dismiss ("HUD Reply"), ECF No. [50]; Plaintiff Halim Mot. to Tansfer [*sic*] the Case Against Henderson Defendants to a Court in North Carolina that Has Juirsdictions [*sic*] Over Them ("Pl.'s Mot. to Transfer"), ECF No. [53]; City of Henderson Defs' Mem. of Authority in Opp'n to Pl. Halim's Mot. to Transfer Case ("City Defs' Opp'n"), ECF No. [54]; Pl. Halim Filinig [*sic*] of Legal Authorities to Supp. Juirsdictions [*sic*] of the Court over Henderson Defendents [*sic*] or Tansfer [*sic*] the Case Against Henderson Defendants to a Court in North Carolina That Has Juirsdictions [*sic*] Over Them ("Pl.'s Filing of Legal Authorities"), ECF No. [55].

if it is filed within [28 days after the entry of judgment] and as a Rule 60(b) motion if it is filed

thereafter.") (citing *Lightfoot v. District of Columbia*, 355 F. Supp. 2d 414, 420-21 (D.D.C.

2005)).

Federal Rule of Civil Procedure 59(e) permits a party to file "[a] motion to alter or amend

a judgment" within "28 days after the entry of the judgment."  Fed. R. Civ. P. 59(e).  Motions

under Rule 59(e) are "disfavored" and the moving party bears the burden of establishing

"extraordinary circumstances" warranting relief from a final judgment.  *Niedermeier v. Office of*

*Baucus*, 153 F. Supp. 2d 23, 28 (D.D.C. 2001).  Rule 59(e) motions are "discretionary and need

not be granted unless the district court finds that there is an intervening change of controlling

law, the availability of new evidence, or the need to correct a clear error or prevent manifest

injustice."  *Firestone v. Firestone*, 76 F.3d 1205, 1208 (D.C.Cir. 1996) (per curiam) (internal

quotation marks omitted).  Rule 59(e) does not provide a vehicle "to relitigate old matters, or to

raise arguments or present evidence that could have been raised prior to the entry of judgment."

*Exxon Shipping Co. v. Baker*, 554 U.S. 471, 485 n. 5, 128 S.Ct. 2605, 171 L.Ed.2d 570 (2008)

(internal quotation marks omitted).

Here, Halim has failed to establish that reconsideration is warranted with respect to this

Court's dismissal of the City Defendants from this case.  Halim argues that the Court erred in

dismissing Plaintiffs' claims against the City Defendants because jurisdiction over them is

properly conferred by 28 U.S.C. § 1332 – the diversity statute.  *See* Pl.'s Filing of Legal

Authorities, at 1-2.  However, the statutory diversity of citizenship provisions confer only

*subject-matter* jurisdiction.  *Personal jurisdiction* is a separate and distinct requirement, which,

for the reasons discussed at length in the Court's February 15, 2013 Memorandum Opinion,

Halim failed to establish with respect to the City Defendants.  Halim provides neither legal authority nor new facts which would warrant reconsideration of that finding.

Alternatively, Halim requests that in the event the Court declines to reconsider its finding that it lacks personal jurisdiction over the City Defendants, that it transfer the now dismissed case against them to "a Court in North Carolina."  *See* Pl.'s Mot. to Transfer; Pl.'s Filing of Legal Authorities, at 2.  Preliminarily, it is not clear to the Court that it would have the authority to effectuate a piecemeal transfer of Plaintiffs' "case" against the City Defendants, while retaining jurisdiction over Halim's claims against HUD.  *See Hill v. United States Air Force*, 795 F.2d 1067, 1070 (D.C. Cir. 1986)).  But in any event, at no point prior to dismissal did either party move the Court to transfer this case.  While a Court *may* on its own initiative transfer an action under 28 U.S.C. § 1631, "[t]he law of this Circuit also holds that *sua sponte* transfers pursuant to 28 U.S.C. § 1631 are committed to the discretion of the District Court where no party has moved to transfer a case brought in the wrong jurisdiction."  *Jovanovic v. US-Algeria Business Council* 561 F. Supp. 2d 103, 112 (D.D.C. 2008) (citing *Hill v. United States Air Force*, 795 F.2d 1067, 1070 (D.C. Cir. 1986)).

For all of the foregoing reasons, and because Halim raises no other theories or facts warranting reconsideration of Court's dismissal order, Halim's motion to reconsider or transfer shall be denied.  As the Court's dismissal of Plaintiffs' claims against the City Defendants was without prejudice, both Plaintiffs remain free to commence a new action against them in an appropriate forum.

## HUD'S MOTION TO DISMISS

As the Court has previously observed, Plaintiffs' Second Amended Complaint – the operative complaint in this action – is vaguely worded and, by any reasonable measure, difficult

to decipher.  The Court finds particularly troublesome Plaintiffs' failure to relate their several factual allegations to any clearly articulated legal claims; indeed the only reference to potential legal bases for any of Plaintiffs' claims may be found within the section titled "Grounds for the Court[']s Jurisdiction" wherein Plaintiffs cursorily ground jurisdiction over "all of the defendants" in the action on 42 U.S.C. § 1983; Title VI of the Civil Rights Act; and inexplicably, Federal Rules of Civil Procedure, Rule 12(b)(7) and Rule 19 and *Capital Medical Center, LLC v. Amerigroup Maryland, Inc.*, 677 F. Supp. 2d 188 (D.D.C. 2010).   Based upon the Court's generous construction of Plaintiffs' allegations against HUD (all of which are expressly stated by Plaintiffs as relating exclusively to Halim, *see* Second Am. Compl. ¶¶ I-XXII), Plaintiffs appear to allege discrimination based on Halim's status as an Egyptian National and a Muslim in connection with a series of contracts between Halim and HUD related to Halim's purchase and management of various properties.

Based upon the Court's understanding of the Second Amended Complaint, Halim purchased multifamily housing properties through HUD foreclosure sales in various locations throughout the United States, including in Schenectady, New York; Montgomery, Alabama; Meridian, Mississippi; and Henderson, North Carolina.  *See generally* Second Am. Compl.  To provide the requisite context, the Court shall adopt the description of HUD's Multifamily Property Disposition programs helpfully supplied by HUD in its opening brief, to which Plaintiffs have raised no objection:

> The Multifamily Property Disposition ("MPD") is the program through which HUD manages and disposes of multifamily housing projects that are owned by HUD or that are subject to a mortgage held by HUD in a manner that is consistent with the National Housing Act, 12 U.S.C. § 1701, *et. seq*. The goals of the program, among other things, are to: 1) protect the financial interests of the Federal government; 2) preserve certain housing so that it can remain available to and affordable by low-income persons; 3) preserve and revitalize residential neighborhoods; 4) maintain the existing housing stock in a decent, safe and sanitary condition; and 5) maintain housing for the purpose

of providing rental housing. 12 U.S.C. § 1701z-11. *See also* 12 U.S.C. § 1715z-11a. Some properties are sold under the Multifamily Mortgage Foreclosure Act of 1981, 12 U.S.C. § 3701-3717. To effectuate the goals of the MPD program, multifamily properties are frequently sold with use agreements that specify repair requirements that must be completed within a set period of time, use restrictions to maintain the property as low-income residential housing, and affordability restrictions limiting the rent amount/levels at the property. 12 U.S.C. § 3706(b).

HUD Mot. at 6.

For the Schenectady, New York and Meridian, Mississippi properties, Halim also entered into Housing Assistance Payment ("HAP") contracts. *See* Second Am. Compl. ¶¶ III-XV. HAP contracts are administered by HUD pursuant to its Section 8 program. As HUD explains,

In 1974, Congress created the Section 8 housing program by amending the United States Housing Act of 1937, "to 'ai[d] low-income families in obtaining a decent place to live,' 42 U.S.C. § 1437f(a) . . . by subsidizing private landlords who could rent to low-income tenants." *Cisneros v. Alpine Ridge Group*, 508 U.S. 10, 12 (1993). Section 8 assistance comes in two forms: (1) project-based assistance; and (2) tenant-based assistance. 24 C.F.R. § 982.1(b). Project-based assistance is dedicated to a specific apartment building or complex, with HUD making subsidy payments to a property owner ("owner"), either directly or through a contract administrator, such as a public housing authority, which then pays the subsidies to the owner. *Id.*; *see also* 24 C.F.R. §§ 886.309, 982.151(a). The owner and HUD are signatories to a Housing Assistance Payments ("HAP") contract that specifies the maximum monthly rent that the owner may charge. *Cisneros*, 508 U.S. at 12; *see also* 42 U.S.C. § 1437f(d); 24 C.F.R. § 982.151(a). Low-income tenants pay a portion of the rent according to their ability to pay, and HUD makes up the difference between the tenant's contribution and the allowable rent under the HAP contract. *Cisneros*, 508 U.S. at 12; *see* 42 U.S.C. § 1437f(d). If a project-based HAP contract is terminated, HUD provides vouchers to eligible residents, enabling them to choose the place they wish to rent. 42 U.S.C. § 1437f(t)(2).

HUD Mot. at 5-6.

With respect to the Schenectady, New York and Meridian, Mississippi properties, Halim alleges that HUD "punished [him] for his origin and belief" by terminating the HAP agreements. *See* Second Am. Comp. ¶¶ III-XIII. Halim also appears to have been a purchaser in a HUD foreclosure sale of a property in Flushing, Ohio but alleges that he was "prevented from closing" and that HUD "kept the escrow cash" – seemingly because of the same national origin and

religious discrimination which Halim seems to contend fueled the termination of his HAP agreements.  *See id.* ¶ XVI.  Halim's allegation with respect to the Montgomery, Alabama property is unclear, as the Second Amended Complaint states only that HUD "gave false presentation about" the property and is "refusing to release the escrow cash" in retaliation for his "allegations regarding other properties."  *Id.* ¶ XVII.  Finally, Plaintiffs' allegations regarding the Henderson, North Carolina property are exclusively targeted at purported misconduct by the City Defendants; Plaintiffs raise no allegation against HUD with respect to this property.  *See id.* ¶¶ XXIII-XXVIII.

By way of relief, Plaintiffs request that the Court order HUD to (1) reinstate rental assistance under the contracts; (2) return the escrow cash held in connection with those contracts; and (3) pay one million dollars in monetary damages for "all harms" suffered.  *See* Second Am. Compl. at 7.  HUD has moved to dismiss Plaintiffs' claims against it pursuant to Federal Rules of Civil Procedure 12(b)(1), for lack of subject matter jurisdiction, and 12(b)(6), for failure to state a claim upon which relief may be granted.  Because Plaintiffs have cited no authority that waives the government's sovereign immunity to this action, and because Plaintiffs have failed to state a claim against Secretary Donovan in his individual capacity, this case must be dismissed.

Under the doctrine of sovereign immunity, "the United States may not be sued without its consent and … the existence of consent is a prerequisite for jurisdiction."  *United States v. Mitchell*, 463 U.S. 206, 212 (1983).  Such consent may not be implied, but must be "unequivocally expressed."  *United States v. Nordic Village, Inc.*, 503 U.S. 30, 33-34 (1992). This immunity applies equally to a federal official sued in his official capacity.  *See Kentucky v. Graham*, 473 U.S. 159, 165-66 (1985). Here, neither of the authorities upon which Plaintiffs

appear to rely – specifically, Title VI of the Civil Rights Act, 42 U.S.C. § 2000d and 42 U.S.C. § 1983 – waive the government's immunity to this action.

Title VI provides, in pertinent part, that "[n]o person in the United States shall, on the ground of race, color, or national origin, be excluded from participation in, be denied the benefits of, or be subjected to discrimination under any program or activity receiving Federal financial assistance." 42 U.S.C. §2000d. The statute defines "program or activity" and "program" to mean "all of the operations of" departments or instrumentalities of state or local governments, colleges and certain public systems of higher education, certain corporations and other private organizations, and other entities established by a combination of two or more of the foregoing entities. *See id.* §2000-d-4a.

Notably, the statutory definitions of "program or activity" and "program" do not include federal agencies. Accordingly, as courts consistently hold, "Title VI does not apply to programs conducted directly by federal agencies." *Williams v. Glickman*, 936 F. Supp. 1, 5-6 (D.D.C. 1996) (citations omitted); *accord Wise v. Glickman*, 257 F. Supp. 2d 123, 131-32. Indeed, "[e]ven before the terms 'program or activity' and 'program' were statutorily defined in 1988, courts had held that Title VI 'was meant to cover only the situations where federal funding is given to a non-federal entity which, in turn, provides financial assistance to the ultimate beneficiary.'" *Id.* at 6 (quoting *Soberal-Perez v. Heckler*, 717 F.2d 36, 38 (2d Cir. 1983), *cert. denied*, 466 U.S. 929 (1984)).

The Multifamily Property Disposition program under which foreclosure sales are managed and the Section 8 program through which Halim received HAP payments are both administered directly by HUD. Plaintiffs do not dispute this, and in fact, the various contracts upon which Plaintiffs' Second Amended Complaint relies were executed by HUD directly with

Halim, *see* HUD Mot., Ex. 1 (HAP Contract regarding Schenectady, New York property); *id.*, Ex. 2 (HAP Contract regarding Meridian, Mississippi property); *id.*, Ex. 3 (Foreclosure Sale Use Agreement regarding Montgomery, Alabama property); *id.*, Ex. 4 (Terms and Requirements of Foreclosure Sale regarding Flushing, Ohio property).[2]   Accordingly, because Halim may not bring suit under Title VI for programs conducted directly by the federal government, any claims brought pursuant to Title VI must be dismissed.   While Plaintiffs' opposition brief seems to challenge as unimaginable the proposition that the federal government would be immune from liability in this context, this "Court does not have the authority to redraft an unambiguous statute and ignore established case authority."   *Glickman*, 936 F. Supp. at 6 ("The plaintiffs claim that it would be 'inconceivable' that Title VI should not apply to discrimination by federal agencies. However, the language of the statute and the cases addressing the issue support just that conclusion.").

The Second Amended Complaint also identifies 42 U.S.C. § 1983 as a jurisdictional basis for its claims.  Section 1983 provides, in pertinent part:

> Every person who, under color of any statute, ordinance, regulation, custom, or usage, of any *State or Territory or the District of Columbia*, subjects, or causes to be subjected, any citizen of the United States or other person within the jurisdiction thereof to the deprivation of any rights, privileges, or immunities secured by the Constitution and laws, shall be liable to the party injured in an action at law, suit in equity, or other proper proceeding for redress[.]…

42 U.S.C. § 1983 (emphasis added).

---

[2] The Court may consider these exhibits in ruling on HUD's motion to dismiss because they are documents upon which Plaintiffs' claims necessarily rely.  Indeed, Plaintiffs cite to two of these same exhibits in their opposition brief, *see* Pls.' Opp'n at 4.  *See Hinton v. Corr. Corp. of Am.*, 624 F. Supp. 2d 45, 46 (D.D.C. 2009) ("Matters that are not 'outside' the pleadings that a court may consider on a motion to dismiss include the facts alleged in the complaint, documents attached as exhibits or incorporated by reference in the complaint, or documents upon which the plaintiff's complaint necessarily relies even if the document is produced not by the plaintiff in the complaint but by the defendant in a motion to dismiss.") (internal citations and quotation marks omitted).

In order to state a claim under Section 1983, a plaintiff must allege the deprivation of a constitutional right, and must show that the alleged deprivation was committed by a person acting under color of *state* law. *West v. Atkins*, 487 U.S. 42, 48 (1988). By its terms, Section 1983 does not apply to any federal government entity or to federal officials acting under color of federal law. *See Settles v. United States Parole Comm'n*, 429 F.3d 1098, 1104 (D.C. Cir. 2005). Accordingly, because HUD is a federal agency, and Secretary Donovan is a "federal official[ ] acting under color of federal law," *id*., Plaintiffs cannot bring this action under Section 1983.

To be sure, in *Bivens v. Six Unknown Named Agents of Fed. Bureau of Narcotics*, 403 U.S. 388 (1971), the Supreme Court "recognized for the first time an implied private action for damages against federal officers alleged to have violated a citizen's constitutional rights." *Corr. Servs. Corp. v. Malesko*, 534 U.S. 61, 66 (2001). However, to be held liable under *Bivens*, the official must have participated personally in the alleged wrongdoing. Liability cannot be premised upon a theory of vicarious liability or respondeat superior. *See Ashcroft v. Iqbal*, 556 U.S. 662, 675-77 (2009) ("Because vicarious liability is inapplicable to *Bivens* … suits, a plaintiff must plead that each Government-official defendant, through the official's own individual actions, has violated the Constitution."). Here, Plaintiffs' Second Amended Complaint nowhere even mentions Secretary Donovan, let alone state facts implicating him in any of the alleged misconduct. Accordingly, to the extent Plaintiffs' citation to Section 1983 in their pleadings could be liberally construed to assert a *Bivens* claim against Secretary Donovan, such claim would in any event require dismissal under Rule 12(b)(6) for failure to state a claim upon which relief can be granted.

In summary, the two causes of action identified in Plaintiffs' pleadings do not provide a waiver of HUD's sovereign immunity to this action. Nor has the Court discerned any other

authority for waiver from the vague allegations in the Second Amended Complaint. *See FDIC v. Meyer*, 510 U.S. 471, 478 (1994) ("[T]he United States simply has not rendered itself liable under [28 U.S.C.] § 1346(b) for constitutional tort claims."); *Zhu v. Gonzales*, Civ. A. No. 04-1408, 2006 WL 1274767 (D.D.C. May 8, 2006), quoting *Hohri v. United States*, 782 F.2d 227, 245 n. 43 (D.C. Cir. 1986), *vacated on other grounds*, 482 U.S. 64 (1987) (42 U.S.C. §§ 1985 and 1986 "by their terms, do not apply to actions against the United States."); 5 U.S.C. § 704 (conferring jurisdiction under the APA to review "[a]gency action made reviewable by statute and final agency action for which there is no other adequate remedy in a court….").

Finally, the Court observes that nowhere in their pleadings do Plaintiffs purport to rely on the limited waiver of sovereign immunity provided by the Tucker Act, which gives the Court of Federal Claims subject matter jurisdiction over claims against the United States for money damages exceeding $10,000 that are founded "upon any express or implied contract with the United States, or for liquidated or unliquidated damages in cases not sounding in tort." 28 U.S.C. § 1491(a)(1). Indeed, the pendency of a separate action in the Federal Court of Claims brought by Halim against HUD, alleging breach of contract related to several of the same properties that are the subject of this case suggests a conscious decision by Plaintiffs *not* to style the instant suit as a breach of contract action. *See Halim v. Donovan*, Civ. A. No. 12-5, 106 Fed. Cl. 677 (Fed. Cl. 2012). Furthermore, even broadly construing Plaintiffs' "discrimination" claims as claims for money damages arising from HUD's allegedly illegal termination of its various contracts with Halim, this Court would nevertheless lack subject matter jurisdiction over those claims because they would fall within the exclusive jurisdiction of the Court of Federal Claims. *See* 28 U.S.C. § 1491(a)(1). Even Plaintiffs' requests for reinstatement of rental assistance under the contracts and return of escrow cash, *see* Second Am. Compl. at 7 – although

not "money damages" *per se* – would appear to fall within the scope of the Tucker Act and therefore the exclusive jurisdiction of the Court of Federal Claims because these claims are "tied to and subordinate to a money judgment." *James v. Caldera*, 159 F.3d 573, 580 (Fed. Cir. 1998). *Cf. Smalls v. United States*, 471 F.3d 186, 190 (D.C. Cir. 2006) ("A complaint is not in essence one for monetary damages if the only remedy requested is 'non-monetary relief that has considerable value independent of any future potential for monetary relief.'" (quoting *Tootle v. Sec'y of the Navy*, 446 F.3d 167, 176 (D.C. Cir. 2006)). *See also Motorola, Inc. v. Perry*, 917 F. Supp. 43, 46 (D.D.C. 1996) ("[A] plaintiff may not sidestep Tucker Act jurisdictional requirements by artful pleading. Tucker Act jurisdiction may not be avoided by converting a complaint for monetary relief into a complaint for declaratory or injunctive relief.").

For all of the foregoing reasons, and because the Court can discern no grounds for a waiver of HUD's sovereign immunity to this action, Plaintiffs' claims against HUD must be dismissed for lack of subject matter jurisdiction and failure to state a claim.

## CONCLUSION

For the reasons stated herein, the Court shall GRANT HUD's motion to dismiss and deny Halim's motion to reconsider or transfer. Plaintiffs' case is therefore dismissed in its entirety. An appropriate Order accompanies this Memorandum Opinion.

Date: July 1, 2013

_____/s/_____
**COLLEEN KOLLAR-KOTELLY**
United States District Judge